IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | Criminal No. 21-146 |
| VINCENT CHAMBERS, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

Defendant Vincent Chambers is charged in a one-count Indictment with possession with intent to distribute quantities of crack cocaine, heroin and fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), for conduct occurring on or about March 10, 2021. (Docket No. 16). Presently before the Court is Defendant's Motion to Suppress Evidence, which is opposed by the Government. (Docket Nos. 45, 47). Defendant did not file a reply to the Government's Response by the established deadline of July 20, 2022, (*see* Docket No. 46), thus the Court took the matter under advisement and it is now ripe for disposition. After careful consideration of the parties' submissions, and for the following reasons, Defendant's Motion to Suppress will be denied.

**I.      BACKGROUND**

The background of this case is derived from the Affidavit in Support of a Criminal Complaint and Arrest Warrant executed by Detective David C. Ernst of the Allegheny County Police Department. (*See* Docket No. 5-1). As detailed in the Affidavit, Detective Ernst is assigned to the Department's Narcotics, Vice & Intelligence Division and specifically to the Violent Crimes and Firearms Unit, and he is federally deputized and authorized to investigate violations of federal controlled substances law. (*Id.*, ¶ 1). Detective Ernst has approximately seven years of law

enforcement experience, and he has been involved in "countless narcotics investigations, incidents, and arrests." (*Id.*).

As to the events of March 10, 2021, Detective Ernst and Detective Josh Stegena were assigned to the McKeesport area on a violent crime suppression detail, with their attention focused on Soles Street in connection with an ongoing firearms investigation. (Docket No. 5-1, ¶ 4). The detectives were patrolling the area in an unmarked Ford Explorer, which is very well known in the McKeesport area due to their unit's persistent and proactive enforcement. (*Id.*, ¶¶ 5, 6).

At approximately 7:51 p.m., the detectives turned the Ford Explorer onto Soles Street and observed Defendant standing on the sidewalk. (Docket No. 5-1, ¶ 5). As the detectives approached Defendant's location, he observed their vehicle, clutched the right side of his waistband area and began to run. (*Id.*). As Detective Ernst explained, based on his training and experience, individuals who unlawfully possess handguns often do not conceal them in a conventional manner, such as in a holster. (*Id.*, ¶ 6). Moreover, when carrying a handgun in an unconventional manner, a fleeing individual must clutch it in order to keep it secured to his person. (*Id.*). In this instance, while running several blocks, Defendant did not stop clutching the right side of his waistband, which led Detective Ernst to believe that he possessed a firearm. (*Id.*, ¶ 7).

When the detectives observed Defendant slow to a walk, they exited their patrol vehicle and Detective Stegena approached Defendant from the front while Detective Ernst approached him from behind. (Docket No. 5-1, ¶ 8). At this point, Defendant still was clutching the right side of his waist, and the detectives instructed him to show his hands. (*Id.*). When Defendant lifted his hands, a brown cardboard box fell to the ground from his right waistline area. (*Id.*). The box partially opened when it struck the ground, and Detective Ernst observed what he immediately recognized to be bricks of heroin/fentanyl. (*Id.*). Defendant then was placed under arrest. (*Id.*).

A subsequent search of his person resulted in the discovery of one additional brick of heroin/fentanyl, approximately one-half ounce of crack cocaine, one clear plastic bag containing a small quantity of marijuana and one black TCL smartphone. (*Id.*).

On March 11, 2021, Defendant was charged in a Criminal Complaint with possession with intent to distribute a quantity of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). (Docket No. 5). As explained in the Government's Response, after a laboratory report determined that the controlled substances recovered on March 10, 2021 were heroin, fentanyl and crack cocaine, the grand jury returned the one-count Indictment on April 7, 2021, charging Defendant with possession with intent to distribute quantities of crack cocaine, heroin and fentanyl, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C). (Docket No. 16).

## II. **MOTION TO SUPPRESS EVIDENCE**

Defendant now seeks to suppress the evidence seized on March 10, 2021, arguing that it was obtained in violation of the Fourth Amendment for the following reasons: (1) the detectives did not have reasonable suspicion or probable cause to pursue Defendant when they initially observed him; (2) Defendant's flight when he observed the detectives was insufficient to justify their immediate pursuit of him, which he contends was a seizure without reasonable suspicion or probable cause; (3) there was insufficient evidence to support Defendant's immediate detention and subsequent search of his person; and (4) the detention, search and seizure was warrantless and absent exigent circumstances. (Docket No. 45, ¶¶ 8.A. – 8.D.). Defendant's Motion contains little else beyond these general assertions that the detectives' conduct violated his Fourth Amendment rights. Nonetheless, he requests an evidentiary hearing "to determine the matters contained herein." (*Id.* at 3).

In response, the Government argues that the detectives' pursuit of Defendant was supported by reasonable suspicion and therefore was lawful. (Docket No. 47 at 3-5). The Government also maintains that once Defendant dropped the box and Detective Ernst observed controlled substances, the detectives' reasonable suspicion ripened into probable cause justifying the warrantless arrest of Defendant and the subsequent search of his person. (*Id.* at 5-6). Consequently, the Government submits that Defendant's Motion to Suppress should be denied without a hearing, as he has not raised any factual or legal dispute that warrants a hearing. (*Id.* at 7). For reasons that follow, the Court finds that an evidentiary hearing is unnecessary, and further concludes that no Fourth Amendment violation occurred in this case.

### A. No Evidentiary Hearing is Required

Federal Rule of Criminal Procedure 12(b)(3)(C) permits a defendant to file a motion to suppress evidence before trial, but an evidentiary hearing on such a motion is not held as a matter of course. *See* Fed. R. Crim. P. 12(c)(1) (stating that the court "may" schedule a motion hearing). The purpose of an evidentiary hearing on a suppression motion "is to assist the court in ruling upon a defendant's specific allegations of unconstitutional conduct—its purpose is not to assist the moving party in making discoveries that, once learned, might justify the motion after the fact." *United States v. Hines*, 628 F.3d 101, 105 (3d Cir. 2010). Therefore, to require a hearing, "a suppression motion must raise 'issues of fact material to the resolution of the defendant's constitutional claim.'" *Id.* (quoting *United States v. Voigt*, 89 F.3d 1050, 1067 (3d Cir. 1996)). A hearing is required only if the suppression motion is "sufficiently specific, non-conjectural, and detailed to enable the court to conclude that (1) the defendant has presented a colorable constitutional claim, and (2) there are disputed issues of material fact that will affect the outcome of the motion to suppress." *Id.* (citing *Voigt*, 89 F.3d at 1067) (explaining that a claim is

"colorable" if it consists "of more than mere bald-faced allegations of misconduct").

In summary, the procedure for a defendant who seeks an evidentiary hearing on a motion to suppress is to "(1) state a colorable legal claim, (2) identify facts material to that claim, (3) show why the facts are disputed, and then (4) request a hearing to resolve the dispute." *Hines*, 628 F.3d at 108.  In this case, Defendant's Motion does not raise a material fact or dispute the Government's version of events. Given these failures, an evidentiary hearing is not warranted.

First, Defendant's Motion does not identify material facts.  "In the context of a suppression motion, a defendant may raise an issue of material fact by submitting evidence that, if true, would tend to establish an essential element of his or her claim that evidence was obtained unconstitutionally." *Hines*, 628 F.3d at 106 (citing *Voigt*, 89 F.3d at 1067).  Defendant has not provided any evidence in support of his broad assertion that a Fourth Amendment violation occurred, thus he has failed to raise any issue of fact.

In addition, the factual background contained in Defendant's Motion does not dispute the Government's version of events set forth in Detective Ernst's Affidavit in support of the Criminal Complaint.  (*Compare* Docket No. 45, ¶¶ 4-7 *with* Docket No. 5-1, ¶¶ 4-8).  Other than broadly claiming that a Fourth Amendment violation occurred, Defendant has not offered any version of events contrary to the version in Detective Ernst's Affidavit.  *See United States v. Jackson*, 363 F. App'x 208, 210 (3d Cir. 2010) (holding that there was no abuse of discretion in district court's decision to deny evidentiary hearing where the defendant did not offer any version of events contrary to the version contained in police reports attached to his motion).

Given that Defendant's Motion to Suppress fails to identify facts material to his claims, and show why the facts are disputed, an evidentiary hearing is not required in this case, and the Motion will be decided based upon the record that exists.

### B. No Fourth Amendment Violation Occurred

The Fourth Amendment protects citizens against unreasonable searches and seizures. U.S. CONST. amend. IV. "Warrantless searches and seizures are presumptively unreasonable and are therefore prohibited under the Fourth Amendment, unless an exception applies." *United States v. Mundy*, 621 F.3d 283, 287 (3d Cir. 2010). One exception to the warrant requirement is a *Terry* stop and frisk. The Supreme Court held in *Terry v. Ohio*, 392 U.S. 1 (1968), that a police officer is permitted, consistent with the Fourth Amendment, to "conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citing *Terry*, 392 U.S. at 30).

The reasonable suspicion requirement "is only triggered by a seizure, which occurs when an officer applies physical force or when a person submits to an officer's 'show of authority[.]' " *United States v. Hester*, 910 F.3d 78, 84 (3d Cir. 2018) (citing *California v. Hodari D.*, 499 U.S. 621, 625 (1991)). Accordingly, "[t]he initial step in our suppression analysis is to determine whether a seizure has taken place and, if so, when the seizure occurred." *United States v. Brown*, 765 F.3d 278, 288 (3d Cir. 2014) (citing *United States v. Torres*, 534 F.3d 207, 210 (3d Cir. 2008); *Johnson v. Campbell*, 332 F.3d 199, 205 (3d Cir. 2003) (in conducting a suppression analysis, the court "must first determine at what moment [the defendant] was seized")). Here, Defendant claims he was seized when the detectives initially pursued him. (Docket No. 45, ¶ 8.B.). Conversely, the Government maintains that Defendant was not seized until he was arrested. (Docket No. 47 at 5). In this Court's estimation, neither party's position is correct. Rather, for reasons that follow, the Court finds that Defendant was seized when he complied with the detectives' instruction to show his hands.

In assessing whether a Fourth Amendment seizure has taken place, the Court initially notes

6

that a seizure "does not occur simply because a police officer approaches an individual and asks a few questions." *Florida v. Bostick*, 501 U.S. 429, 434 (1991); *see also United States v. Drayton*, 536 U.S. 194, 200 (2002) ("Law enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen."). Similarly, an officer's pursuit of a suspect, alone, does not constitute a seizure. To that end, in *Michigan v. Chesternut*, 486 U.S. 567, 575-76 (1988), the Supreme Court held that no seizure occurred when police officers in a vehicle observed the defendant, upon seeing the vehicle, start to run, and the officers accelerated to catch up to the defendant and then drove alongside him before he discarded a pack of pills, which the officers then seized. As in *Chesternut*, in the present case, "[t]he record does not reflect that the police activated a siren or flashers; or that they commanded [the Defendant] to halt, or displayed any weapons; or that they operated the car in an aggressive manner to block [the Defendant's] course or otherwise control the direction or speed of his movement. . . . While the very presence of a police car driving parallel to a running pedestrian could be somewhat intimidating, this kind of police presence does not, standing alone, constitute a seizure." *Id.* at 575. Accordingly, the Court concludes that the detectives' initial pursuit of Defendant did not amount to a seizure for Fourth Amendment purposes.

A seizure occurs "only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *United States v. Mendenhall*, 446 U.S. 544, 554 (1980). To reiterate, "[a] seizure occurs when there is either (a) 'a laying on of hands or application of physical force to restrain movement, even when it is ultimately unsuccessful,' or (b) submission to 'a show of authority.' " *Untied States v. Brown*, 448 F.3d 239, 245 (3d Cir. 2006) (quoting *Hodari D.*, 499 U.S. at 626). "[T]he test for existence of a 'show of

authority' is an objective one: not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person." *Id.* (quoting *Hodari D.*, 499 U.S. at 628). The Supreme Court has articulated several factors to be considered as part of the objective inquiry, including the threatening presence of several officers, the fact that an officer displayed a weapon, some physical touching of the individual, or the use of a tone of voice or language to signify that compliance with the officer's request is required. *Mendenhall*, 446 U.S. at 554.

Considering these principles, the detectives' encounter with Defendant ripened into a *Terry* stop when he complied with the detectives' instruction to show his hands. In this Court's opinion, that is the earliest point in time that a seizure occurred because a reasonable person in Defendant's position would feel that his liberty was restrained by two police officers approaching him, one from the front and one from behind, and instructing him to show his hands. *See, e.g.*, *Brown*, 448 F.3d at 246 (holding that when the defendant turned to face the police car and placed his hands on the vehicle, it constituted compliance with a show of authority and amounted to a seizure); *United States v. Little*, Crim. No. 16-167, 2017 WL 3420936, at *4 (D.N.J. Aug. 8, 2017) (finding seizure where two officers exited their vehicle, quickly proceeded toward the defendant's car, and ordered him to put his hands in the air and he complied); *United States v. Coleman*, Crim. No. 08–107–GMS, 2009 WL 395218, at *6 (D. Del. Feb. 17, 2009) (finding that seizure occurred when the defendant was ordered to show his hands). The only way Defendant could have left at that point would have been to attempt to flee, which is something that a reasonable person would not do in such situation.

Having concluded that Defendant was seized when he complied with the detectives' instruction to show his hands, the inquiry now turns to whether the *Terry* stop was supported by

"reasonable, articulable suspicion that criminal activity [was] afoot." *Wardlow*, 528 U.S. at 123. For reasonable suspicion to exist, "[t]he officer must simply have some objective justification for the stop and must be able to articulate more than an 'unparticularized suspicion or hunch' that the suspect is engaged in criminal activity." *Brown*, 765 F.3d at 290 (quoting *Wardlow*, 528 U.S. at 124). "The ultimate question is whether a reasonable, trained officer standing in [the detectives'] shoes could articulate specific reasons justifying [Defendant's] detention." *Johnson*, 332 F.3d at 206.

In analyzing whether there was an objective basis for reasonable suspicion, we are to consider "the totality of the circumstances - the whole picture." *Brown*, 448 F.3d at 247 (quoting *United States v. Cortez*, 449 U.S. 411, 417 (1981)). To that end, reasonable suspicion may be the result of any combination of one or several of the following factors: "specialized knowledge and investigative inferences," "personal observation of suspicious behavior," "information from sources that have proven to be reliable, and information from sources that—while unknown to the police—prove by the accuracy and intimacy of the information provided to be reliable at least as to the details contained within that tip." *Id.* (citations omitted). Importantly, the reasonable suspicion analysis "must be limited to the facts known to the officers when they effected a *Terry* stop." *United States v. Lowe*, 791 F.3d 424, 435 (3d Cir. 2015).

Accordingly, when Defendant was seized – that is, when he complied with the detectives' instruction to show his hands - the detectives were required to have reasonable suspicion to justify the seizure. At that point in time, the Court concludes that Defendant's suspicious behavior provided an objective basis for reasonable suspicion.

The Supreme Court and the Third Circuit Court of Appeals have identified the following factors as suggesting suspicious behavior: (1) the presence of a suspect in a high crime area; (2) a

9

suspect's presence on a street at a late hour; (3) a suspect's "nervous, evasive behavior," or flight from police; and (4) a suspect behaves in a way that conforms to an officer's specialized knowledge of criminal activity. *Brown*, 448 F.3d at 251 (citations omitted). Three of these factors are present here.

First, Defendant was located in McKeesport, which the Government points out is a high-crime area.[1] (Docket No. 47 at 2, n.2). Additionally, Defendant exhibited nervous, evasive behavior by running away when he noticed the approaching detectives' unmarked Ford Explorer. (Docket No. 5-1, ¶ 5). Furthermore, Detective Ernst observed Defendant continually clutching the right side of his waistband area as he ran in a manner which led him to believe, based on his training and experience, that Defendant had a firearm. (*Id.*, ¶¶ 5-7). Considering the totality of the circumstances, Defendant's behavior provided the detectives with reasonable suspicion to seize him. *See, e.g., United States v. Bonner*, 363 F.3d 213, 217 (3d Cir. 2004) (observing that "flight upon noticing police, plus some other indicia of wrongdoing, can constitute reasonable suspicion") (citing *Wardlow*, 528 U.S. at 125-26)).[2]

After Defendant was seized, the detectives instructed him to show his hands. (Docket No. 5-1, ¶ 8). When he did so, a cardboard box fell from his right waistline area, struck the ground and partially opened, revealing what Detective Ernst recognized as bricks of heroin/fentanyl. (*Id.*). At that point, Defendant was arrested without a warrant. (*Id.*).

"A warrantless arrest of an individual in a public place for a felony, or a misdemeanor committed in the officer's presence, is consistent with the Fourth Amendment if the arrest is

---

1 Notably, the detectives were assigned to McKeesport on a violent crime suppression detail. (Docket No. 5-1, ¶ 4).

2 As the Third Circuit explained, in *Wardlow*, "[t]he 'plus' factor was Wardlow's mere presence in an area known for high narcotics trafficking." *Bonner*, 363 F.3d at 217 (citing *Wardlow*, 528 U.S. at 124).

supported by probable cause." *Maryland v. Pringle*, 540 U.S. 366, 370 (2003) (citing *United States v. Watson*, 423 U.S. 411, 424 (1976); *Atwater v. Lago Vista*, 532 U.S. 318, 354 (2001) (stating that "[i]f an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender")); *see also Beck v. Ohio*, 379 U.S. 89, 91 (1964) (probable cause exists when facts and circumstances within a police officer's knowledge are sufficient to warrant a prudent person to conclude that an offense has been committed by the person being arrested). In this instance, the Court concludes that the detectives had probable cause to arrest Defendant after he raised his hands and the cardboard box fell to the ground and partially opened, revealing what Detective Ernst immediately recognized as bricks of heroin/fentanyl based on his training and experience. (Docket No. 5-1, ¶¶ 1, 8). Given that the heroin/fentanyl in plain view[3] just had fallen from Defendant's person, the detectives had reasonable grounds to believe that Defendant had illegally possessed a controlled substance, which provided ample probable cause to arrest him.

Finally, following Defendant's arrest, the detectives searched his person and recovered an

---

3    "The plain-view doctrine authorizes seizure of illegal or evidentiary items visible to a police officer whose access to the object has some prior Fourth Amendment justification and who has probable cause to suspect that the item is connected with criminal activity." *Illinois v. Andreas*, 463 U.S. 765, 771 (1983). Under the plain view doctrine, "if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant." *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993). Thus, three elements must be met to establish the validity of a warrantless seizure under the plain view doctrine: (1) the officer was lawfully in the position from which the object could be seen; (2) the incriminating character of the object was immediately apparent; and (3) the officer had a lawful right of access to the object. *See Horton v. California*, 496 U.S. 128, 136-37 (1990).

   These three requirements are satisfied here. First, Detective Ernst was lawfully in a position from which the heroin/fentanyl could be seen because there was reasonable suspicion for a *Terry* stop of Defendant, as previously discussed. Next, in order for an object's incriminating character to be immediately apparent, the police must have probable cause to believe the object is contraband without conducting a further search of it. *Dickerson*, 508 U.S. at 375; *see also Texas v. Brown*, 460 U.S. 730, 741-42 (1983) (recognizing that probable cause for seizure of evidence satisfies immediately apparent requirement). Here, the "immediately apparent" requirement is satisfied because, upon viewing the contents of the cardboard box, Detective Ernst immediately recognized it as bricks of heroin/fentanyl, given his experience and involvement in "countless narcotics investigations, incidents, and arrests." (Docket No. 5-1, ¶¶ 1, 8). Finally, the detectives had a lawful right of access to the heroin/fentanyl because, as discussed, there was reasonable suspicion to seize Defendant, and it was obvious to Detective Ernst, as an experienced narcotics detective, that the substance he observed was contraband. Accordingly, the detectives properly seized the heroin/fentanyl which had been contained in the cardboard box that fell to the ground from Defendant's person.

additional brick of heroin/fentanyl, crack cocaine, a small quantity of marijuana and a smartphone (Docket No. 5-1, ¶ 8). After making a lawful arrest, the police may conduct a warrantless search incident to the arrest to secure weapons and to prevent the concealment or destruction of evidence. *United States v. Robinson*, 414 U.S. 218, 234-35 (1973). "A custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment; that intrusion being lawful, a search incident to the arrest requires no additional justification." *Id.* at 235. Consequently, the search of Defendant incident to his arrest and the seizure of the controlled substances and the smartphone were lawful.

### III.   CONCLUSION

The seizure, arrest and search of Defendant, and all evidence seized on March 10, 2021, did not violate the Fourth Amendment. Accordingly, Defendant's Motion to Suppress Evidence (Docket No. 45) is DENIED.

An appropriate Order follows.

*s/ W. Scott Hardy*
W. Scott Hardy
United States District Judge

Date:  August 19, 2022


cc/ecf:  All counsel of record